FILED & JUDGMENT ENTERED
Steven T. Salata

August 28 2017

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
Laura T. Beyer
United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 17-31184 |
| **GRAND DAKOTA PARTNERS, LLC** ) | Chapter 11 |
| ) | |
| Debtor. ) | Jointly Administered |
| ) | |

### ORDER TRANSFERRING VENUE TO NORTH DAKOTA UNDER 28 U.S.C. § 1412

**THIS MATTER** came before the Court on the United States Bankruptcy Administrator's *Motion to Dismiss or Change Venue* [Dkt. 16, 07/24/17] (the "Motion"), in which the United States Bankruptcy Administrator argued that (a) venue of these two jointly administered Chapter 11 cases, *In re Grand Dakota Partners, LLC*, Case No.17-31184, and *In re Grand Dakota Hospitality, LLC*, Case No. 17-31185, is not properly placed in the Western District of North Carolina under the applicable requirements of 28 U.S.C. § 1408 and (b) in the alternative, even if venue is proper, the two cases nevertheless should be transferred to North Dakota under 28 U.S.C. § 1412. At a hearing conducted on July 26, 2017, Bradley E. Pearce appeared on behalf of Grand Dakota Partners, LLC ("GDP") and Grand Dakota Hospitality, LLC ("GDH", and together with GDP, the "Debtors"), Douglas R. Ghidina and M. Glenn Huether appeared on behalf of American Bank Center ("American"), a creditor and party in interest in these cases, and Ann Dornblazer appeared on behalf

of the United States Bankruptcy Administrator (the "Bankruptcy Administrator"). During the hearing, Stephen D. Barker's declaration [Dkt. 3] and live testimony from Mr. Barker were offered into evidence. At the conclusion of the evidentiary hearing, the Court took the Motion under advisement and allowed the parties to submit post-hearing briefs. Based upon the record in this case, the evidence presented and the arguments of counsel, the Court denies the request in the Motion to dismiss the two cases under 28 U.S.C. § 1408 for improper venue but grants the request in the Motion to transfer the two cases to North Dakota pursuant to 28 U.S.C. § 1412. In doing so, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT[1]

1. GDP, a Delaware limited liability company, and GDH, a Delaware limited liability company, own and operate the Grand Dakota Lodge and Conference Center, a full-service hotel with restaurant, bar and conference facilities, located in Dickinson, Stark County, North Dakota (the "Hotel"). GDP owns the Hotel while GDH owns a liquor license issued in North Dakota which is used for the bar and restaurant at the Hotel.

2. The direct owners of GDP are two Nevada entities: Merlin Holdings, LLC ("Merlin"), which owns 99% of GDP's equity interests, and Cibix Management, Inc. ("Cibix"), which owns 1% of GDP's equity interests. Cibix is also the limited liability company manager of GDP. Cibix maintains an office in Charlotte, North Carolina. Stephen Barker is the sole owner of Cibix, and he owns 98% of Merlin. He thereby indirectly owns more than 99% of GDP. Mr. Barker and his wife, Kris Barker, each own 50% of the equity interests in GDH. The Barkers reside in Charlotte, North Carolina.

---

[1] To the extent that any Finding of Fact also contains or may constitute a conclusion of law, it should be considered as such.

3. Management and operation of the Hotel ultimately is at the direction and approval of Cibix, the limited liability company manager of GDP, and Mr. Barker, the principal of GDP and Cibix. Day-to-day on-site operation of the Hotel is overseen by Kinseth Hospitality Company, Inc., an Iowa corporation ("Kinseth"), which is not an affiliate of either Debtor.

4. The Debtors are registered to conduct business in North Dakota. The Debtors are not registered to conduct business in North Carolina.

5. According to GDP's schedules of assets and liabilities [Dkt. 21], as of the petition date of July 20, 2017 (the "Petition Date"), GDP owned the Hotel and: (i) two bank accounts at American containing approximately $344,000; (ii) approximately $42,000 of personal property (hotel inventory and supplies); (iii) approximately $15,000 of office furniture and equipment; (iv) approximately $14,000 of other machinery, equipment and vehicles; and (v) another $100,000 of hotel room, lobby and bar furniture and furnishings. All such assets of GDP are in North Dakota.

6. As reflected in Schedule G of GDP's schedules of assets and liabilities, GDP is a party to more than 70 executory contracts. To the extent GDP disclosed the locations of the counterparties, all but five of them are located in North Dakota and none are located in North Carolina. In Schedule G GDP has identified 26 executory contract counterparties located in North Dakota. GDP has not disclosed in Schedule G the locations of the remaining counterparties to pending executory contracts, but it appears from the contract descriptions (such as catering agreement, which is the description for 31 of such executory contracts) that these contracts also involve counterparties located in North Dakota.

7. According to GDH's schedules of assets and liabilities [Dkt. 17], as of the Petition Date GDH's only assets are a $4,300 checking account at American, approximately $24,500 of liquor, wine and beer and its North Dakota liquor license. All such assets of GDH are in North Dakota.

3

8. As reflected in Schedule D of GDP's schedules of assets and liabilities, GDP's only secured creditor is American, which maintains offices in North Dakota but not in North Carolina. According to Schedule E of GDP's schedules of assets and liabilities, two of GDP's three unsecured creditors with priority claims are located in North Dakota (and the third is the Internal Revenue Service). GDP lists 31 unsecured creditors in Schedule F, of which 17 are identified in as being located in North Dakota. Substantially more than 90% of the total debts owed by GDP (in excess of $9.4 million) are owed to secured and unsecured creditors located in North Dakota.

9. GDH's only known creditor is American.

10. Mr. Barker testified at the hearing on July 26, 2017, that he periodically travels to North Dakota to participate in meetings related to operation and management of the Hotel and that other Cibix employees sometimes travel to North Dakota for the same reasons. Mr. Barker also testified that he and other Cibix employees frequently consult via telephone with Kinseth personnel, both on-site and in Iowa, regarding management and operation of the Hotel. He further testified that many decisions ultimately made by him or Cibix regarding operation of the Hotel are made through collaboration with such Kinseth personnel.

## CONCLUSIONS OF LAW[2]

*Venue Under 28 U.S.C. § 1408.*

11. The bankruptcy venue statute, 28 U.S.C. § 1408, provides in pertinent part that:

> a case under title 11 may be commenced in the district court for the district —
> (1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement….

---

[2] To the extent that any Conclusion of Law also contains or may constitute a finding of fact, it should be considered as such.

4

28 U.S.C. § 1408. The term "principal place of business" refers to the place where a corporation's officers "direct, control and coordinate the corporation's activities." The Hertz Corp. v. Friend, 559 U.S. 77, 80 (2010). For each Debtor, that place is in Charlotte, North Carolina, where such Debtor's headquarters is located, where such Debtor's decision makers are located, and from which such decision makers control and direct such Debtor's business activities.

12.     Although neither Debtor is registered with the North Carolina Secretary of State to conduct business within North Carolina, such fact does not alter the conclusion that each Debtor's principal place of business is located in Charlotte, North Carolina, and that venue of the two cases under 28 U.S.C. § 1408 is proper in the Western District of North Carolina. There is no requirement in 28 U.S.C. § 1408 that a foreign debtor must register to conduct business within a state in order to be eligible to file a bankruptcy petition and to become a bankruptcy debtor in that state by virtue of its principal place of business being within that state. Any such lack of registration is only non-dispositive evidence regarding the location of a corporation's principal place of business. See Schneider v. CCC-Boone, LLC, Civil Case No. 5:13-CV-144, 2014 U.S. Dist. LEXIS 163663 (W.D.N.C. Nov. 21, 2014) ("while not determinative… a failure to register provides some evidence that Monaco is not [the corporation's] principal place of business.") (citation omitted). Here, notwithstanding the lack of any registration to conduct business in North Carolina, the record demonstrates that each Debtor's principal place of business is in Charlotte, North Carolina, such that venue of the two cases under 28 U.S.C. § 1408 is properly placed in the Western District of North Carolina.

*Transfer of Venue under 28 U.S.C. § 1412*

13.     Notwithstanding that venue of a bankruptcy case may be proper in a district, a court may transfer a case or proceeding under title 11 to another district "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. The moving party bears the burden of showing

5

by a preponderance of the evidence that either the interests of justice or the convenience of the parties would be served by a transfer of the case. See In re Lakota Canyon Ranch Dev., LLC, Case No. 11-03739-8, 2011 Bankr. LEXIS 4652, at *7 (Bankr. E.D.N.C. June 21, 2011). Section 1412 is written in the disjunctive, such that each of the two prongs — "in the interest of justice" or "for the convenience of the parties" — constitutes an independent ground for transferring venue. In re Patriot Coal Corp., 482 B.R. 718, 738-39 (Bankr. S.D.N.Y. 2012). The decision of whether to transfer venue is within a court's discretion based on a case-by-case analysis of the facts underlying each particular case. Id.

14.    When determining whether to transfer venue "for the convenience of parties" under Section 1412, courts in North Carolina have considered the following six criteria set forth by the Fifth Circuit Court of Appeals in the case of In re Commonwealth Oil Ref. Co., 96 F.2d 1239, 1247 (5th Cir. 1979): "(1) the proximity of creditors of every kind to the court; (2) the proximity of the Debtor to the court; (3) the proximity of the witnesses necessary to the administration of the estate; (4) the location of the assets; (5) the economic administration of the estate; and (6) the necessity for ancillary administration if a liquidation should occur." See Lakota Canyon Ranch, 2011 Bankr. LEXIS 4652, at *7; Spartan Holding Co., Inc., Case No. 11-02355-8, 2011 Bankr. LEXIS 1992, at *5 (Bankr. E.D.N.C. May 24, 2011).

15.    The location of the Debtors' assets weighs in favor of transferring the case to North Dakota. There is ample support for the proposition that a Chapter 11 case can, and should, be administered in the bankruptcy court closest to a debtor's major asset. See In re Rehoboth Hospitality, LP, Case No. 11-12798 (KG), 2011 Bankr. LEXIS 3992 (U.S. Bankr. D. Del. Oct. 19, 2011) (transferring venue to Texas where the debtor's principal asset was a hotel located in Texas.); In re Pinehaven Assoc., 132 B.R. 982 (Bankr. E.D.N.Y. 1991) (transferring venue to Mississippi where the

debtor's principal asset was a motel located in Mississippi); In re Pavilion Place Assocs., 88 B.R. 32 (Bankr. S.D.N.Y. 1988) (transferring venue to Minnesota where the debtor's principal asset was a shopping center located in Minnesota); In re Old Delmar Corp., 45 B.R. 883 (Bankr. S.D.N.Y. 1985) (transferring venue to Texas where the debtor's principal asset was an income-producing apartment complex in Texas). In Old Delmar Corp., the debtor was a Delaware corporation with a New York principal place of business whose four principals resided in New York but whose principal asset was an apartment complex located in Texas. The Delmar court explained that the factor which "overwhelmingly mitigate[d] in favor of transfer" was that all of the debtor's assets were located in Texas. 45 B.R. at 884. It also explained that "it is particularly appropriate for the locale of an income producing property to administer the estate." Id. at 844-85.

16. Here, the Hotel and related operational assets, which are GDP's sole source of income, are located in Dickinson, North Dakota. All of GDH's assets (the liquor license, liquor and a bank account) are located in North Dakota. Just as the courts in Rehoboth, Pinehaven, Pavilion Place and Old Delmar Corp. found that the location of the debtors' assets favored venue transfer to the districts in which the debtors' primary assets were physically located, this Court concludes that the location of all or substantially all of the Debtors' assets in North Dakota supports transfer of these cases to North Dakota.

17. The North Dakota location of a significant majority of the Debtors' creditors also weighs in favor of transferring these two cases to North Dakota. In Old Delmar Corp., the bankruptcy court noted that, because nineteen of the twenty-one creditors were located in Texas, Texas was the logical place for them to participate. 45 B.R. at 885. The same is true here. The vast majority of the Debtors' creditors (including counterparties to executory contracts) are located in North Dakota where the Hotel is operated. Trade creditors in North Dakota likely would bear substantial hardship traveling

7

to defend their claims in North Carolina. The formation and functioning of an unsecured creditor's committee would more likely be successful in North Dakota than in North Carolina. North Dakota would the best place for the overwhelming majority of the Debtors' creditors and contract counterparties to participate in these two bankruptcy cases.

18. Transfer of these two cases to North Dakota is also appropriate because many of the potential witnesses necessary to the administration of the estate likely will be located in North Dakota. In Pinehaven, the debtor was a New York limited partnership whose principal place of business was in New York but whose primary asset was a motel in Mississippi. The Pinehaven court concluded that the proximity of witnesses favored transfer of venue to Mississippi. 132 B.R. at 988-89. The person responsible for the day-to-day decisions of managing the motel was in Mississippi – not New York. Id. Noting that an appraisal of the motel might be required, the Pinehaven court also observed that it appeared inevitable that Mississippi appraisers would be selected. Id. Additionally, in any proceeding to value the motel, the testimony of other local appraisers, brokers, sales agents and persons might be required. Id. Similarly, in Rehoboth, the debtor was a Delaware limited partnership whose principal place of business was in Pennsylvania but whose primary asset was a hotel located in Texas. Discussing the proximity of the parties to the court, the Rehoboth court noted that the person responsible for the true day-to-day decisions as to operation of the hotel was located in Texas. 2011 Bankr. LEXIS 3992, at *12. It also noted that a significant issue in the case would be the "hotel's condition, operational ability/capacity and valuation," which would be presented through witnesses who would face significant expense if they had to travel from Texas to Delaware, such that avoidance or reduction of those expenses favored transfer of the case from Delaware to Texas. Id., at *13-14.

19. Similar to the facts considered by the courts in the Pinehaven and Rehoboth cases, with respect to Debtor GDP, Kinseth personnel on-site in Dickinson, North Dakota, are responsible

8

for the Hotel's day-to-day operations and likely would be the witnesses to provide any testimony regarding such on-site and day-to-day operations. Any appraisers or real estate experts regarding the Debtors' assets in North Dakota most likely would be located in North Dakota. Conversely, the only apparent potential witnesses located in North Carolina would be Mr. Barker and perhaps other Cibix employees.

20. Because the overwhelming majority of creditors and potential witnesses are located in North Dakota, North Dakota is the logical place for them to participate and for these two bankruptcy cases to proceed.

21. Although generally there is a presumption in favor of maintaining a debtor's choice of venue, the weight afforded to a debtor's choice is diminished when the "choice of forum is not directly related to the operative, underlying facts of the case." See Rehoboth, 2011 Bankr. LEXIS 3992, at *10. Here, to the extent that the presence of the Debtors' executive management in North Carolina might favor retention of venue, such factor is significantly outweighed by consideration of the other factors which heavily favor transfer of these cases to North Dakota.

22. In Rehoboth, the court observed that, while the debtor's principal place of business for "all executive-level operational and financing decisions" was in Pennsylvania, the "true day-to-day operational and managerial decisions for the hotel are conducted on-site at the hotel in Texas," and therefore concluded that this factor favored transfer of the debtor's case to Texas. Id., at *11-12. Similarly, in Pinehaven, the court rejected the debtor's argument that venue should remain in New York simply because "Pinehaven's major decisions and general supervision emanates" from New York and instead concluded that such argument exaggerated the nexus of New York to the administration of the case while minimizing the role of the day-to-day manager of the motel. 132 B.R. at 989. Noting that the debtor's principal regularly took trips to the motel, the Pinehaven court also

9

observed that the debtor's principal likely would continue such trips during the pendency of the Chapter 11 case and could, in many instances, couple his regular trips with Chapter 11 matters. Id. In both Rehoboth and Pinehaven, the courts noted that whatever inconveniences might be experienced by the debtors by the transfer were outweighed by all the other considerations favoring transfer of venue.

23.    The same is true for these two Debtors. Although each Debtor's principal place of business is Charlotte, North Carolina, the day-to-day operational and managerial decisions for the Hotel are conducted by Kinseth in Dickson, North Dakota. Mr. Barker periodically visits the Hotel in North Dakota and likely can coordinate such future travel to coincide with attending bankruptcy court hearings in North Dakota. In terms of any analysis of venue under 28 U.S.C. § 1412, the presence of the Debtors' principal places of business in North Carolina is outweighed by consideration of the other factors that weigh in favor of transferring these two cases to North Dakota.

24.    The economic administration of the Debtors' two bankruptcy estates also weighs in favor of transferring these two cases to North Dakota. A Chapter 11 case can be most efficiently and economically administered in the bankruptcy court closest to its major asset, which in this instance would be the Hotel (for GDP) and the liquor license (for GDH), each of which is in Dickinson, North Dakota. See Old Delmar Corp, 45 B.R. at 885 (explaining that "efficient and economic administration of [the estate of an income producing property] can best take place where the facility is maintained and service and where rents are collected"); Rehoboth, 2011 Bankr. LEXIS 3992, at *15 (noting that "in the context of what is essentially a single asset case, the location of the lone improved real estate asset is of particular concern to the Court"… and that the case is "better administered by a court in the district in which it is located"); Pavilion Place, 88 B.R. at 36 (explaining that "improved real estate is a peculiarly local concern often better administered by a court in the district in which it is located").

25.     In summary of the factors addressed above, North Dakota is the site of (a) a significant majority of the Debtors' creditors, (b) substantially all of GDP's assets and all of GDH's assets, (c) all or substantially all of the Debtors' operating revenues, (d) the day-to-day management of the Hotel, which is the source of such operating revenues, and (e) most of the potential key witnesses. If the value of the Hotel becomes an issue in GDP's bankruptcy case, the bankruptcy court in North Dakota will have greater familiarity with the locale and economic realities of Dickinson, North Dakota, and will be better situated than this Court to determine an appropriate valuation of the Hotel. Additionally, should these cases be converted to Chapter 7 liquidation proceedings, or should it become necessary to appoint a Chapter 11 trustee, a trustee in North Dakota would be better able to efficiently and economically administer or liquidate the bankruptcy estate, as compared to a trustee located in North Carolina.

26.     Consideration and balancing of all of these factors supports transfer of these two cases to North Dakota for the convenience of the parties pursuant to 28 U.S.C. § 1412.

27.     It is also in the interest of justice for these two cases to be transferred to North Dakota. A separate basis for the transfer of a case pursuant to 28 U.S.C. § 1412 is if the transfer is in "interest of justice." When considering the "interest of justice" courts consider "a broad and flexible standard," which must be applied on a case-by-case basis. In re Patriot Coal Corp., 482 B.R. 718, 739 (Bankr. S.D.N.Y. 2012). Factors considered include whether transferring venue would promote the "efficient administration of the bankruptcy estate, judicial economy, timeliness and fairness." Id. "As a practical matter, in most cases, if the convenience of the parties and witnesses will be served by transfer, it usually follows that justice will also be served by transfer." Pinehaven, 132 B.R. at 990.

28.     Retaining venue in North Carolina would make it difficult and expensive for parties in interest other than the Debtors to participate in these two cases. The vast majority of non-insider

creditors and contract counterparties are located in North Dakota. If this case were to remain in North Carolina, distance and cost likely would unfairly reduce creditor participation in the reorganization process. Although the Debtors' principal places of business are in North Carolina, their meaningful assets and business activities are in North Dakota. Accordingly, transferring these cases to North Dakota also is in the best interest of justice pursuant to 28 U.S.C. § 1412.

29. For the reasons set forth above, it is reasonable and appropriate to transfer of venue of these two cases to North Dakota pursuant to 28 U.S.C. § 1412.

**NOW, THEREFORE,** based upon the foregoing Findings of Fact and Conclusions of Law, the Court hereby **ORDERS** that:

A. That portion of the Motion seeking dismissal of the two cases under 28 U.S.C. § 1408 for improper venue is **DENIED**;

B. That portion of the Motion seeking transfer of these two cases to the United States Bankruptcy Court for the District of North Dakota pursuant to 28 U.S.C. § 1412 is **GRANTED**; and

C. The Clerk is authorized and directed to transfer these two cases, *In re Grand Dakota Partners, LLC*, Chapter 11 Case No.17-31184, and *In re Grand Dakota Hospitality, LLC*, Chapter 11 Case No. 17-31185, to the United States Bankruptcy Court for the District of North Dakota.

**SO ORDERED.**

This Order has been signed                                    United States Bankruptcy Court
Electronically. The Judge's
Signature and the Court's seal
Appear at the top of the Order.